# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BONNIE CATHERINE BEDNARCZYK, | |
| Plaintiff, | No. C15-4235-LTS |
| vs. | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable C.J. Williams, Chief United States Magistrate Judge. *See* Doc. No. 20. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Bonnie Catherine Bednarczyk's applications for Social Security disabled widower's (DWB) benefits and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. 401 *et seq*.

Bednarczyk has filed timely objections (Doc. No. 21) to the R&R. The Commissioner has not filed a response. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

3

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.  THE R&R

Bednarczyk applied for DWB and SSI benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act) on August 1, 2012, alleging she became disabled on October 3, 2006,[1] due to diabetes mellitus, obesity, osteoarthritis and some deformity of her right upper thigh due to surgery after receiving treatment for necrotizing fasciitis. Doc. No. 20 (citing AR at 270-73, 288-89, 351-53). After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found at step two that Bednarczyk did not have severe impairments, and therefore, was not disabled as defined in the Act. Bednarczyk argues the ALJ erred in determining that she was not disabled because:

1. The ALJ failed to develop the record as to Bednarczyk's "low IQ."

2. The ALJ failed to consider whether Bednarczyk's physical impairments, combined with her low intelligence, met or were medically equivalent to listing 12.05.

3. The ALJ did not include the opinions of the Disability Determination Examiners in her written decision.

4. The ALJ failed to give the proper controlling weight to her treating physician's opinions.

---

[1] The onset date was later amended to September 4, 2011 at the administrative hearing. Doc. No. 20 (citing Administrative Record (AR) at 35).

4

> 5. The ALJ's decision that Bednarczyk did not have any medically determinable impairments that were severe, was not supported by substantial evidence in the record.

*See* Doc. No. 20 at 14 (citing Doc. No. 15). Judge Williams addressed each argument separately in his R&R.

With regard to Bednarczyk's IQ, Judge Williams noted the only reference to this alleged impairment in the medical records was made in passing. Doc. No. 20 at 15 (citing AR 265-66 where doctors noted "low intelligence, per chart" and "low IQ" in records from 2006 for treatment of her necrotizing fasciitis). He also noted Bednarczyk failed to provide any evidence of this alleged impairment, did not allege it in her application and did not testify at the administrative hearing that she suffered from any mental impairment. *Id.* at 16. Judge Williams cited Eighth Circuit law, which provides that the ALJ is under no obligation to investigate an impairment when it is not presented in the application or raised at the hearing. *Id.* (citing *Smith v. Astrue*, 232 F. App'x 617, 619 (8th Cir. 2007) and *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). Accordingly, Judge Williams concluded that the ALJ "had no duty to further inquire as to claimant's mental intelligence because claimant did not raise the issue and there was an absence of medical evidence suggesting claimant had a mental impairment." *Id.*

Judge Williams then considered Bednarczyk's argument that the ALJ failed to consider whether her medical impairments were equivalent to a listing. Judge Williams noted that the ALJ did not proceed to step three to determine whether Bednarczyk's impairments met a listing because she terminated the analysis at step two by finding that Bednarczyk had no severe impairments. *Id.* at 17. At this point, the ALJ concluded Bednarczyk was not disabled. Judge Williams noted the ALJ would have erred by proceeding to step three after making this finding at step two. *Id.* Judge Williams concluded that the ALJ properly terminated the analysis at step two by finding Bednarczyk had no severe medically determinable impairments. *Id.*

Next, Judge Williams considered whether the ALJ erred by not discussing the disability determination examiners' opinions in her decision. *Id*. He noted that because the ALJ gave little weight to the opinion evidence of the treating medical source, Dr. Veit, she was required to consider the opinion evidence of the disability determination examiners (or state agency medical consultants) *and* describe the weight given to each of these sources. *Id*. at 18. He acknowledged that the ALJ had not mentioned either of the two state agency medical consultant opinions in her decision. *Id*. at 19. Judge Williams concluded that while this was error, it was harmless. *Id*. He noted that Dr. Gernes' opinion was based on "insufficient medical information" because there was no current medical examination and Dr. Hunter's opinion (submitted after the medical examination) was wholly consistent with the ALJ's finding of non-severity for Bednarczyk's impairments. *Id*. Specifically, Dr. Hunter had opined that Bednarczyk's diabetes and osteoarthrosis were non-severe impairments and that Bednarczyk had no combination of impairments that was severe. *Id*. After reviewing the range of motion exam, knee x-rays and notes of the consultative examination, Dr. Hunter concluded that Bednarczyk had "good use of [her] arms and legs" and "would be capable of a wide variety of work activity." *Id*. (citing AR at 80). Judge Williams reasoned "[t]here is nothing in this record to suggest that the ALJ would have decided this case differently had she explicitly assigned weight to these consulting medical examiners. Dr. Gernes offered no valid opinion, and Dr. Hunter's medical opinion evidence supports the decision of the ALJ." *Id*. Therefore, he concluded the ALJ's error was harmless. *Id*.

Judge Williams then considered whether the ALJ erred by not giving controlling weight to the opinion of the treating physician, Dr. Veit. *Id*. at 20. Dr. Veit completed a fill-in-the-blank form, or medical source statement, in which he opined that Bednarczyk had severe physical restrictions, but did explain how he reached that conclusion. *Id*. at 21. The ALJ discredited his opinion on that basis and also because Dr. Veit's opinion as

to Bednarczyk's mental limitations was outside his scope of practice and inconsistent with his own treatment notes. *Id.*

Judge Williams separately reasoned that the severe limitations identified by Dr. Veit in his opinion were inconsistent with his treatment notes. He noted that Dr. Veit considered Bednarczyk's necrotizing fasciitis to be a past medical condition and prescribed only Tylenol with codeine as treatment for the pain associated with Bednarczyk's arthritis. *Id.* Dr. Veit also found Bednarczyk had a balanced gait, no complaints of musculoskeletal weakness or pain, loss of balance, and no neurological problems including no loss of feeling. *Id.* She was also willfully non-complaint with her diabetes treatment.

Judge Williams also found that Dr. Veit's opinion was inconsistent with other evidence in the record. *Id.* The consultative examiner found Bednarczyk had normal muscle and grip strength, intact motor function and could walk without an assistive device, albeit with a limp. *Id.* Dr. Hunter had opined that claimant's knee x-rays were within normal limits and that she had good use of her arms and legs. *Id.* at 22. Bednarczyk's own statements indicated that on a regular day, she would cook for herself, do light house work and had some trouble taking care of her personal needs, but mostly did "ok." *Id.* Judge Williams stated that Bednarczyk's failure to follow Dr. Veit's treatment recommendations in managing her diabetes, missing doctor's appointments and taking the prescribed Tylenol with codeine twice a week suggested that neither her reports, nor Dr. Veit's opinions, were credible as to the severity of her limitations. *Id.* Judge Williams concluded the ALJ could have provided more detail as to why she assigned little weight to Dr. Veit's opinion, but found the ALJ's decision on this point was supported by substantial evidence in the record as a whole.[2] *Id.*

---

[2] The only aspect Judge Williams found was not supported by substantial evidence was the ALJ's conclusion that it was "obvious that the claimant completed the form" and that Dr. Veit had merely signed it. *Id.*

7

Finally, Judge Williams considered whether substantial evidence supported the ALJ's decision that Bednarczyk did not have any medically determinable severe impairments. *Id.* Judge Williams first noted that substantial evidence in the record demonstrates Bednarczyk was not following Dr. Veit's instructions regarding the treatment of her diabetes. Dr. Veit commented on March 5, 2014, that Bednarczyk "does not watch her diet or follow her sugars. She kind of does what she wants to do." *Id.* at 23 (citing AR at 325). Bednarczyk also admitted at the hearing that she did not take any medications for her diabetes. *Id.* Judge Williams agreed with the Commissioner that Bednarczyk's non-compliance with treatment recommendations supports the ALJ's finding that her diabetes was non-severe.

With regard to arthritis, range of motion tests and motor strength tests resulted in mostly normal findings. *Id.* The only limitations were to Bednarczyk's right hip and lumbar spine. *Id.* (citing AR at 321-23). Moreover, Bednarczyk took only Tylenol with codeine twice a week for pain associated with her arthritis. Dr. Veit noted that Bednarczyk reported no complaints of musculoskeletal "pain or weakness, tremors, loss of balance, sleep problems, [or] confusion" upon exam. *Id.* at 24 (citing AR at 290). He did not impose any activity restrictions. Indeed, he noted that she engaged in occasional walking or other light activity and recommended that she engage in physical activity. *Id.* Dr. Hunter also found Bednarczyk's arthritis to be non-severe. *Id.*

Bednarczyk's other alleged impairment was necrotizing fasciitis. This was treated in 2006 and, at the time of the hearing, Bednarczyk was no longer receiving treatment for her right leg. *Id.* Judge Williams noted that Dr. Veit listed this issue under "Past Medical History" and, other than prescribing Tylenol with codeine, did not recommend any treatment. *Id.* (citing AR at 289, 325). Likewise, Dr. Wu, Dr. Hunter and Dr. Gernes determined that this impairment had resolved and was non-severe. *Id.* While Bednarczyk complained of lingering pain after surgery for this impairment, the fact that she took only Tylenol with codeine twice a week, was able to perform activities around

8

the house and did not have frequent doctors' visits weighed against a finding that her pain was severe. For all of these reasons, Judge Williams concluded that substantial evidence in the record as a whole supported the ALJ's decision that Bednarczyk had no severe impairments.

## IV. DISCUSSION

### A. *Bednarczyk's Objections*

Bednarczyk objects to three of the five issues outlined above. I will review those issues de novo. The two issues to which Bednarczyk did not object were Judge Williams' finding that the record was adequately developed with regard to Bednarczyk's IQ and that the ALJ did not err by declining to proceed to step three. I will review those issues for clear error.

### B. *Analysis*

#### 1. *Bednarczyk's Low IQ*

Bednarczyk raises no objection to Judge Williams' finding that the ALJ was not obligated to develop the record as to Bednarczyk's allegedly low IQ. Judge Williams cited relevant Eighth Circuit law and I find no clear error with his conclusion that the ALJ had no duty to develop the record for a mental impairment that was not alleged by the claimant nor supported by the medical evidence.

#### 2. *Listing 12.05*

Bednarczyk raises no objection to Judge Williams' conclusion that the ALJ was not required to evaluate whether Bednarczyk's impairments were equivalent to a listing because the ALJ terminated her analysis at step two by finding Bednarczyk had no severe medically determinable impairments. Judge Williams correctly applied the law in reaching this conclusion. The Commissioner's regulations provide that the claimant must

9

have a severe impairment in order to be considered disabled. *See* 20 C.F.R. § 404.1520 ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."). As Judge Williams correctly found, it would have been error for the ALJ to proceed to step three if she did not find severe impairments at step two. I find no clear error in Judge Williams' analysis of this issue.

### 3. *Opinions of Disability Determination Examiners*

Bednarczyk objects to this part of the R&R, in which Judge Williams found that the ALJ's failure to state what weight, if any, she gave to the state agency medical consultants' opinions was harmless. She asserts that Judge Williams should not have put the burden on her to prove that the error was not harmless because that would require her to prove a negative. Bednarczyk also points out that in *Byes v. Astrue*, 687 F.3d 913 (8th Cir. 2012), a case Judge Williams cited, the error involved application of the wrong grid rule. *Id*. at 917-18. The error was deemed harmless because application of the correct grid rule would have resulted in the same finding of "not disabled." *Id*. Bednarczyk argues that the ALJ's error in this case – failing to credit two medical doctors who found Bednarczyk's impairments were severe – is substantially different than the ALJ's error in *Byes*.

I agree with Judge Williams that the ALJ erred in failing to describe the weight given to the state agency medical consultants' opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist."). With regard to *Byes*, Judge Williams cited that case for the legal proposition that "[t]o show an error was not

harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes*, 687 F.3d at 917; Doc. No. 20 at 19. Here, Judge Williams reasoned that nothing in the record suggests that the ALJ would have decided the case differently had she explicitly assigned weight to the state agency medical consultants' opinions. Doc. No. 20 at 19. He noted that Dr. Gernes offered no valid opinion and Dr. Hunter's medical opinion is consistent with the ALJ's ultimate decision. *Id.*

Bednarczyk points out that Dr. Gernes, while stating that she was unable to assess function due to insufficient medical evidence, *did* find that Bednarczyk had severe impairments of diabetes mellitus and osteoarthrosis and allied disorders. AR at 69. Treatment notes indicate Bednarczyk has been diagnosed with those impairments. *See* AR at 288, 325 and 330-31. However, I do not find Dr. Gernes' notation that the impairments were "severe" to be sufficient to show that the ALJ would have decided differently if she would have explained the weight assigned to the state agency medical consultants' opinions.

The ALJ listed multiple reasons for finding that Bednarczyk's impairments were not severe. She noted that Bednarczyk was non-compliant with diabetes management. AR at 20. To the extent she did seek medical treatment, it was routine and conservative in nature. *Id.* Bednarczyk also failed to follow-up on recommendations made by the treating doctor or take her medications as prescribed, which suggests her symptoms may not have been as serious as alleged. *Id.* Bednarczyk also reported having to use a walker for ambulation, which was inconsistent with the treating physician's notes indicating that she had a balanced and steady gait. *Id.* Furthermore, Bednarczyk admitted she did well[3] with activities of daily living. *Id.* The physical consultative examiner also noted that Bednarczyk had full strength, range of motion and intact sensation throughout. *Id.* at 21.

---

[3] The report indicates she admitted to doing "ok" with activities of daily living. AR at 414.

These reasons are supported by substantial evidence in the record. Dr. Gernes' limited finding that Bednarczyk's diabetes and osteoarthrosis were "severe" does not demonstrate the ALJ would have changed her decision had she explicitly explained the weight she gave to the state agency medical consultants' opinions.

### 4. *Treating Physician Opinion*

Bednarczyk takes issue with this part of the R&R, arguing that the court cannot correct the ALJ's error of failing to provide good reasons for discrediting the opinion of the treating physician by coming up with good reasons of its own. Doc. No. 21 at 1. She argues that there are no good reasons for the ALJ to give little weight to the treating source physician's opinion. In evaluating Dr. Veit's opinion, the ALJ stated it appeared to be obvious that the claimant had completed the form. AR at 21. She stated, "[e]ven though Dr. Veit indicated he had read the form and agreed, he provided no bases for the limitations imposed." *Id.* The ALJ also reasoned that any mental limitations assessed in the form were outside the scope of Dr. Veit's practice and inconsistent with his treatment notes. *Id.* Therefore, she assigned Dr. Veit's opinion little weight. *Id.*

Judge Williams found that Dr. Veit's opinion was inconsistent with his treatment notes. Doc. No. 20 at 21. He went on to note that Dr. Veit's opinion was also inconsistent with the record as a whole, particularly the consultative examiner's opinion, Dr. Hunter's opinion and Bednarczyk's own statements. *Id.* at 21-22. Judge Williams did find that the ALJ's statement that it was "obvious that the claimant completed the form" was not supported by substantial evidence. *Id.* at 22. Judge Williams concluded that while the ALJ could have provided a more reasoned discussion of the parts of the record that led her to assign little weight to Dr. Veit's opinion, substantial evidence supported the ALJ's determination to give little weight to Dr. Veit's opinion regarding Bednarczyk's physical limitations. *Id.*

The ALJ's reasons for assigning Dr. Veit's opinion little weight boil down to three points: (1) he provided no bases for the limitations imposed, (2) it appears the claimant completed the form and Dr. Veit signed it and (3) any mental limitations imposed are outside the scope of Dr. Veit's practice and inconsistent with his treatment notes. The first and third reasons are good reasons supported by substantial evidence in the record as a whole. *See Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) ("We have upheld an ALJ's decision to discount a treating physician's [medical source statement] where the limitations listed on the form 'stand alone,' and were 'never mentioned in [the physician's] numerous records or treatment' nor supported by 'any objective testing or reasoning.'"). I find no error with regard to this aspect of the ALJ's decision.

### 5. *Severity of Impairments*

Bednarczyk objects to this part of the R&R and argues that the ALJ's decision as to the severity of her impairments is not supported by substantial evidence in the record as a whole. She offers no additional reasons other than the ones discussed with regard to the objections I have already addressed. For the reasons stated above, I find that the ALJ's determination at step two that Bednarczyk's impairments are not severe is supported by substantial evidence in the record as a whole.

### V. CONCLUSION

For the reasons set forth herein:
1. Plaintiff Bonnie Catherine Bednarczyk's objections (Doc. No. 21) to the Report and Recommendation are **overruled**;
2. I **accept** Chief United States Magistrate Judge C.J. Williams' January 26, 2017, Report and Recommendation (Doc. No. 20) without modification. *See* 28 U.S.C. § 636(b)(1).
3. Pursuant to Judge Williams' recommendation:

a. The Commissioner's determination that Bednarczyk was not disabled is **affirmed**; and

b. Judgment shall enter against Bednarczyk and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 23rd day of March, 2017.

_____
LEONARD T. STRAND
CHIEF UNITED STATES DISTRICT JUDGE